1                    UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF WASHINGTON

3    THE UNITED STATES OF AMERICA, )
                                   ) No. CR 11-57 RSM
4          Plaintiff,              )
                                   )
5              vs.                 )
                                   )
6    DAVID MYRLAND,                )
                                   )
7          Defendant.              )
     _____)
8

9              VERBATIM TRANSCRIPT OF PROCEEDINGS

10                            OF

11                 A CHANGE OF PLEA HEARING

12     BEFORE THE HONORABLE JAMES P. DONOHUE, MAGISTRATE JUDGE

13                        7/27/2011

14                        APPEARANCES

15             For Plaintiff: Vince Lombardi

16             For Defendant: Stefan Illa

17

18

19

20

21          Transcribed from electronic sound recording

22          Transcript produced by transcription service

23

24             Transcribed by Brian Killgore

25

                                                              1

1      (Proceedings of 7/27/2011)

2           THE CLERK:  All rise.  The United States District

3      Court is again in session, the Honorable James P. Donohue

4      presiding.

5           Your Honor, this is a change of plea hearing in the

6      case of the United States of America v. David Russell

7      Maryland, case number CR 11-57 RSM.

8           Will counsel please make your appearances?

9           MR. LOMBARDI:  Good morning, Your Honor, Vince

10     Lombardi for the United States.

11          THE COURT:  Good morning, Mr. Lombardi.

12          MR. ILLA:  Good morning, Your Honor, Stephan Illa

13     appearing on behalf of the defendant, Mr. David Myrland.

14     Mr. Myrland is here today.

15          THE COURT:  Good morning, Mr. Illa, and good

16     morning, Mr. Myrland.

17          THE DEFENDANT:  Good morning, sir.

18          THE COURT:  Mr. Illa, is it your understanding

19     that Mr. Myrland is prepared to enter a plea?

20          MR. ILLA:  Yes, Your Honor.

21          THE COURT:  Thank you, then Mr. Myrland, at this

22     point I will ask you to stand and to raise your right hand

23     so that you can be sworn in.

24          DEFENDANT DAIVD MYRLAND SWORN

25          THE COURT:  Thank you, please be seated.

1      Mr. Myrland, I want to remind you that you are now

2  under oath.  I am going to ask you a series of questions and

3  it is important that you understand the question and that

4  you answer the question truthfully.

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  If you don't understand my question,

7  let me know and I will try to rephrase it in a way so that

8  you do understand it.

9      If you answer any of my questions falsely, then the

10  answers that you provide today could be used against you in

11  a later prosecution for perjury or for making a false

12  statement.

13      Do you understand?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Would you state your full true name,

16  please?

17           THE DEFENDANT:  David Russell Myrland.

18           THE COURT:  And Mr. Myrland, how old are you?

19           THE DEFENDANT:  Fifty-three.

20           THE COURT:  And how much education have you

21  received?

22           THE DEFENDANT:  Two years of community college

23  after graduation from high school.

24           THE COURT:  Mr. Myrland, have you been treated

25  recently for any mental illness or addiction to narcotic

3

1    drugs?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  Are you currently under the influence

4    of any alcoholic beverage or narcotic drug or medicine that

5    could make it difficult to understand me?

6              THE DEFENDANT:  No, sir.

7              THE COURT:  Mr. Illa, to the best of your

8    knowledge, is Mr. Myrland fully competent to enter a plea

9    today?

10             MR. ILLA:  Yes, Your Honor, he is.

11             THE COURT:  Thank you.

12        Mr. Myrland, have you had a chance to review the

13   indictment?  The indictment is the written document that

14   contains the charge that has been returned against you by

15   the grand jury.

16             THE DEFENDANT:  It was one paragraph.  Yes.

17             THE COURT:  And have you had a chance to speak

18   with Mr. Illa about that indictment and that document?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.

21        Then at this point I am going to ask the assistant

22   United States Attorney to review the charge to which you are

23   expected to plead guilty, and also to advise you of the

24   possible penalties that you could face if you do plead

25   guilty.

4

1              MR. LOMBARDI:  Your Honor, we anticipate that Mr.

2      Myrland will be pleading guilty to the sole count in the

3      indictment, transmission of threatening interstate

4      communication, as charged in count 1, in violation of Title

5      18, United States Code, Section 875(c).

6          The penalties for this offense are as follows:  A term

7      of imprisonment of up to five years; a fine of up to

8      $250,000; a period of supervision following release from

9      prison of between two and three years, and a mandatory

10     assessment of $100.

11             THE COURT:  Mr. Illa, would you agree with the

12     summary of the charge and the possible penalties that could

13     be imposed?

14             MR. ILLA:  Yes, Your Honor, they are accurate.

15             THE COURT:  Thank you.

16         Mr. Myrland, do you understand the charge and the

17     possible penalties that could be imposed if you decide to

18     plead guilty?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Mr. Myrland, the assistant United

21     States Attorney made reference to a period of supervised

22     release of between two and three years, and during any

23     period of supervised release, you would be required to

24     comply with certain conditions that would be established by

25     your sentencing judge at the time of sentencing, and that

                                                            5

1     would be explained to you in greater detail by a probation

2     officer.

3          Now while you are on supervision, if it turns out that

4     you violate any of the terms of your supervised release,

5     then it is possible that you could be returned to prison for

6     the entire period -- a portion or all of the term of your

7     supervised release.

8          Do you understand how supervision works in this regard?

9               THE DEFENDANT:  Yes.

10              THE COURT:  You have the right, Mr. Myrland, if

11    you wish, to enter your guilty plea before Judge Martinez.

12    Judge Martinez is the district judge to whom your case has

13    been assigned.

14         If you wish, however, you may also enter your guilty

15    plea before me today; I am a magistrate judge.

16         If you enter your guilty plea before me today, you will

17    still appear before Judge Martinez for sentencing, but it

18    will be at a later date than today.

19         Do you understand how this process works?

20              THE DEFENDANT:  Yes, sir, and I have signed the

21    consent for you to accept my plea.

22              THE COURT:  Very well, then Mr. Illa, did you

23    discuss the consent with your client, and do you believe

24    that he understands it?

25              MR. ILLA:  I did discuss it; he does understand

*ACE Transcripts, Inc. (206) 467-6188*

1      it.

2                 THE COURT:  Thank you.

3           Mr. Myrland, are you satisfied with the representation

4      and the advice that you have received from Ms. Illa, your

5      attorney in this matter?

6                 THE DEFENDANT:  To the best of my knowledge, yes.

7                 THE COURT:  And have you discussed with him all of

8      the facts surrounding the charge against you?

9                 THE DEFENDANT:  Yes, sir.

10                 THE COURT:  Now I have been provided with a

11     written plea agreement.  Did you carefully review the

12     written plea agreement?

13                 THE DEFENDANT:  Yes, sir, I did.

14                 THE COURT:  Did you discuss it thoroughly with Mr.

15     Illa?

16                 THE DEFENDANT:  I believe so, yes.

17                 THE COURT:  Do you need any additional time to

18     consider the written plea agreement?

19                 THE DEFENDANT:  No, I do not.

20                 THE COURT:  Is this your signature on the last

21     page of the written plea agreement?

22                 THE DEFENDANT:  Yes, sir, it is.

23                 THE COURT:  I would like to ask you some questions

24     about your plea agreement, Mr. Myrland, and the reason that

25     I go through this process is that I want to make sure that

7

**ACE Transcripts, Inc. (206) 467-6188**

1    the written plea agreement accurately sets forth all of the

2    agreements that you have made with the United States.

3         It indicates in Section 1 that you intend to plead

4    guilty to a charge of transmission of threatening interstate

5    communication.

6         Is that your understanding, as well?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  And now with respect to any sentence

9    that may be imposed, do you understand that the Court will

10   make reference to the United States Sentencing Guidelines?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  And have you had a chance to speak

13   with Mr. Illa about how the sentencing guidelines might

14   impact your case?

15             THE DEFENDANT:  At length, yes.

16             THE COURT:  Do you understand that when it comes

17   time for sentencing, the Court will -- at the very -- at the

18   very -- or at the start, will start out by determining a

19   sentencing guideline range?

20        Let me -- that wasn't a very good state.

21             THE DEFENDANT:  Thank you.

22             THE COURT:  Do you understand that when the

23   sentencing process takes place, the Court will begin by

24   determining a sentencing guideline range?

25             THE DEFENDANT:  Yes, sir.

8

**ACE Transcripts, Inc. (206) 467-6188**

1    THE COURT:  And then after determining -- after

2    looking at all of the guidelines and after considering all

3    of the factors that are set forth in Section 5 of your plea

4    agreement, the Court can impose any sentence up to the

5    maximum term that we have already talked about?

6         Do you understand this, as well?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  That means that the sentence that the

9    Court imposes can be above or below the sentencing guideline

10   range that the Court determines at the outset.

11        Do you understand this?

12             THE DEFENDANT:  Inside or outside of the

13   guidelines?

14             THE COURT:  It can be above or below -- excuse me;

15   that means the actual sentence that the Court imposes can be

16   above or below the sentencing guideline range that the Court

17   determines at the outset?

18        Let me go back a little bit.

19        When the Court starts its sentencing process, it will

20   determine a sentencing guideline range.  Then it can

21   consider the plea agreement and it will then consider the

22   sentencing guidelines, and it will also consider all of the

23   factors that are set forth in the sentencing guidelines, and

24   after it considers all of that, the Court can go above or

25   below the sentencing guideline range.

9

1          Do you understand this?

2               THE DEFENDANT:  So the consideration is for

3      enhancements as well as departures?

4               THE COURT:  It can go above or below, yes, sir.

5               THE DEFENDANT:  Yes, sir, I understand.

6               THE COURT:  Okay.

7               THE COURT:  And at time of sentencing, the Court

8      will listen to certain guideline calculation

9      recommendations -- excuse me, let me start back.

10          At time of sentencing the Court will listen to certain

11     recommendations from your attorney and the attorney

12     representing the United States, regarding sentencing

13     guideline calculation recommendations.

14          The Court will also listen to specific sentencing

15     recommendations from your attorney, the attorney

16     representing the United States, and from you, if you wish.

17          Do you understand, however, that none of these

18     recommendations is binding on the Court?

19               THE DEFENDANT:  Yes, sir, I understand.

20               THE COURT:  And do you also understand that you

21     may not withdraw from the guilty plea, based solely on the

22     sentence the Court imposes?

23               THE DEFENDANT:  Yes, sir.

24               THE COURT:  Has anybody promised you what sentence

25     the Court will impose?

1           THE DEFENDANT:  No, sir.

2           THE COURT:  You have reached agreements on certain

3    issues that could have an impact on the ultimate

4    sentence that is given in this case, and those -- some of

5    those agreements are set forth in your plea agreement.  For

6    example, in Section 7, you have agreed that you would make

7    restitution to the city of Kirkland, and to O.R. and J.M. in

8    an amount to be determined by the Court at the time of

9    sentencing.

10        Is that your understanding?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  In Section 8 of your plea agreement,

13   you have also agreed that if any firearms or illegal

14   contraband were seized by law-enforcement, they would be

15   forfeited to the United States.

16        Is that your understanding?

17           (Brief pause in proceedings)

18           THE DEFENDANT:  Yes, sir, I understand.

19           THE COURT:  And this would include, but may not be

20   limited to a Springfield semiautomatic handgun, and

21   magazines and ammunition.

22        Is that your understanding?

23           THE DEFENDANT:  That is correct, sir.

24           THE COURT:  In Section 10 of your plea agreement,

25   the United States has agreed that it will recommend that the

11

1    Court impose a prison sentence of no more than 48 months,

2    but the United States, with that provision, is also free to

3    make other recommendations as it thinks is appropriate,

4    including, but not limited to the terms and conditions

5    regarding supervised release and restitution.

6         Is that your understanding?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  And you are free to make any

9    sentencing recommendation that you think is appropriate and

10   you would like to me before the Court.

11        Is that your understanding?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  And do you also understand that the

14   Court isn't obligated or forced to accept either of these

15   recommendations, and that the Court can again impose, as we

16   discussed before, any sentence, up to the maximum term that

17   is authorized by law that we have already discussed.

18        Is that your understanding?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  In Section 11 of your plea agreement,

21   the United States Attorney's Office for the Western District

22   of Washington, as part of the plea agreement, has agreed

23   that it will not prosecute you for any additional offenses

24   that it knows about at this time that are based on evidence

25   in its possession at this time or that arose out of the

1    conduct that led to this investigation.

2        Is that your understanding?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  And do you understand that the United

5    States is doing this solely in return for the promises you

6    have made in the written plea agreement?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  In Section 12 of the plea agreement,

9    the United States has acknowledged that you have accepted

10   responsibility, and if at time of sentencing it remains

11   satisfied that you have accepted responsibility by your --

12   as a result of your timely notification of your intention to

13   plead guilty, then it will recommend to the Court that your

14   offense be decreased by three levels, assuming that your

15   offense level is 16 or greater.

16       Is that your understanding?

17           THE DEFENDANT:  Yes, sir, it is.

18           THE COURT:  And do you understand that the Court

19   is free to accept or reject any such recommendation by the

20   United States?

21           THE DEFENDANT:  Free to reject -- a departure for

22   a guilty plea?

23           THE DEFENDANT:  Yes, what I want to make sure you

24   are aware of is ultimately these are issues are issues for

25   the Court; it is not a decision of the United States.  The

13

1    United States can make that recommendation, but it is

2    ultimately up to the Court to make those decisions in that

3    regard.  On

4              THE DEFENDANT:  May I have a moment, Your Honor?

5              THE COURT:  You may.

6              (Brief pause in proceedings)

7              THE DEFENDANT:  Yes, sir, I understand.

8              THE COURT:  In Section 14 of your plea agreement,

9    you have agreed that if the Court imposes a prison sentence

10   that is within or below the sentencing guideline range, that

11   the Court determines at time of sentencing, then you will

12   give up your appeal rights to the full extent of the law.

13       Is that your understanding?

14              THE DEFENDANT:  Yes, it is, sir.

15              THE COURT:  And specifically, if that condition is

16   met, then you would give up the right to appeal the actual

17   sentence that is imposed, including any restitution order,

18   and you would give up the right to bring a collateral attack

19   against your conviction and sentence, except as it may

20   relate to effectiveness of legal representation.

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  Is that your understanding?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Mr. Myrland, are all of the agreements

25   that you have made with the United States contained in your

14

**ACE Transcripts, Inc. (206) 467-6188**

1      written plea agreement?

2                 THE DEFENDANT:  I defer to counsel.

3                 MR. ILLA:  Your Honor, there were two other

4      agreements that are not expressly reflected in the written

5      plea agreement, but that are evidenced in two letters; one

6      from the King County Prosecutor, the other from the Kirkland

7      City Attorney's Office.  Those are promises not to prosecute

8      Mr. Myrland for offenses related to this, and also with

9      respect to the City of Kirkland, in addition, they agree

10     that they will dismiss and quash a warrant.

11          These are reflected in the letters that I hold here.  I

12     have marked them as Exhibit 1 and Exhibit 2.

13          With the Court's permission, I would hand them forward

14     and ask that they be attached to the plea agreement.

15                 THE COURT:  Any objection?

16                 MR. LOMBARDI:  Your Honor, I actually do object.

17     The facts that Mr. Illa has relayed are certainly correct.

18     Those letters have been submitted to Mr. Myrland.  They are

19     not part of this plea agreement.

20          Mr. Myrland, through his counsel, asked the United

21     States to speak to those prosecutors and see if they would

22     agree not to prosecute Mr. Myrland for state charges -- as

23     an aside, that was never going to happen -- double jeopardy

24     actually applies back to the State, and the charges that

25     were pending against him at the State are identical to these

                                                              15

1    charges.

2         But they sent a letter confirming that, "Yeah, we are

3    not going to proceed on that."

4         We similarly agreed that we would call Kirkland.  I

5    made very clear, however, to Mr. Illa that I wasn't going to

6    pressure the city of Kirkland.  Their decision was their

7    decision.

8         Those promises have been made to him, but they are not

9    part of this plea agreement; they are outside this plea

10   agreement.  If they breached their promises, that would be

11   between Mr. Myrland and them, and from the government's

12   perspective would not invalidate this plea agreement.

13        Now, he can certainly move to withdraw; the District

14   Court judge could -- the standard for whether you can

15   withdraw from a plea agreement is, I think, a good and fair

16   reason; whether this would rise to that or not would, of

17   course, be up to Judge Martinez, but they are not part of

18   this plea agreement.

19        I don't mind noting for the record that those promises

20   were made to him, but --

21             THE COURT:  I will direct that they be made not

22   part of the plea agreement, but that they be documented in

23   the court file, then, in this matter, if that is an

24   acceptable compromise for you Mr. Illa in this case so that

25   -- and you have said on the record your understanding that

16

1    these are, from your client's perspective, part of parcel of

2    the plea agreement in this, notwithstanding language that is

3    otherwise contained and that is one of the bases upon which

4    your client is entering a plea of guilty.

5              MR. ILLA:  Yes, Your Honor, and I can hand them

6    forward --

7              THE COURT:  And I will direct that they be

8    docketed in this case.

9              MR. ILLA:  Thank you, Your Honor.

10             MR. LOMBARDI:  I think that is a sensible

11   approach, Your Honor.  Thank you.

12             MR. ILLA:  And for the record, Your Honor, Mr.

13   Lombardi has copies of those documents.

14             THE COURT:  Thank you.

15        So I will direct that both letters be docketed, and I

16   think there is an appropriate statement on the record as it

17   relates to the impact of this -- on this plea agreement from

18   both parties' perspectives.

19        Then has anybody, aside from the colloquy that we have

20   just had, Mr. Myrland, has anybody made any promises to you,

21   other than what is contained in the written plea agreement?

22             THE DEFENDANT:  No, sir.

23             THE COURT:  Has anybody put pressure on you or

24   threatened you or tried to force you in any way to plead

25   guilty?

                                                            17

1            THE DEFENDANT:  No, sir.

2            THE COURT:  Is the decision to plead guilty in

3      this case your decision?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  And is it solely your decision?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Mr. Myrland, are you a citizen of the

8      United States?

9            THE DEFENDANT:  Yes, sir.

10            THE COURT:  If you plead guilty or if you are

11      convicted of the charge in this case, you could lose

12      valuable civil rights.  They include the right to vote, the

13      right to serve on a jury, the right to hold public office,

14      and the right to possess any kind of a firearm.

15          Do you understand this?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  Let me talk to you about some of the

18      rights that you have, Mr. Myrland, but rights that you will

19      be giving up if you decide to plead guilty.

20          You have the right to plead not guilty to any charge

21      brought against you, and to continue to plead not guilty.

22          Do you understand this?

23            THE DEFENDANT:  Yes.

24            THE COURT:  If you did plead not guilty, you would

25      then have the right to a trial by jury, and during your

                                                              18

1    trial, you would have the right to effective assistance of

2    an attorney for your defense.

3          You would be presumed to be innocent, and the

4    government would have to prove your guilt beyond a

5    reasonable doubt.

6          You would have the right to see and to hear all

7    witnesses, and to have those cases cross-examined in your

8    defense.

9          You could testify yourself or you could remain silent,

10   and if you decided to remain silent and not put on any

11   evidence, these facts could not be used against you.

12         Do you understand that you have all these rights?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  You would have the right to have the

15   Court issue subpoenas to compel cases to appear at your

16   trial to testify in your defense.

17         At trial, as I mentioned, the United States would have

18   the burden of proving that you were guilty beyond a

19   reasonable doubt.

20         Before you could be convicted, all 12 jurors must be

21   convinced that the United States has met that burden.

22         If you are found guilty after a trial, you would have

23   the right to appeal your conviction to a higher court, and

24   if you could not afford to pay the costs of an appeal, those

25   costs would be paid for you.

```
1              Do you understand that you have all of these rights?
2                   THE DEFENDANT:  Yes, sir.
3                   THE COURT:  Do you also understand that if you
4         plead guilty, and if the plea is accepted by the Court, then
5         there will be no trial, and you will have given up your
6         right to a trial, and you will also have given up all of the
7         other rights associated with a trial that we have just
8         talked about?
9                   THE DEFENDANT:  Yes, sir.
10                  THE COURT:  Then at this point I am going to ask
11        the assistant United States Attorney to review the essential
12        elements of the offense.
13             Mr. Myrland, these are the legal requirements that the
14        United would have to prove if this case were to proceed to
15        trial.
16                  MR. LOMBARDI:  Yes, Your Honor, the elements of
17        the offense charged in count one, transmission of
18        threatening interstate communication in violation of Title
19        18, United States Code, Section 875(c) are as follows:
20             First, the defendant sent a message containing a threat
21        to kidnap or injure the person of another.
22             Second, the defendant sent the message in interstate or
23        foreign commerce.  And third, defendant intended his words
24        to be taken as a true threat.
25                  THE COURT:  Mr. Illa, do you disagree in any
```

20

1   respect with this summary of the essential elements?

2           MR. ILLA:  I do not.

3           THE COURT:  Mr. Myrland, do you understand that if

4   this case were to proceed to trial, the United States would

5   be required to present evidence sufficient to prove each of

6   these elements beyond a reasonable doubt?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  And do you also understand that by

9   pleading guilty, you will be giving up your right to require

10  the government to do this?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Then at this point I will ask the

13  assistant United States Attorney to review the facts that

14  the government believes that it could prove if this case

15  were to proceed to trial.

16          MR. LOMBARDI:  As art of this plea, Mr. Myrland is

17  admitting that on or about August 30 of last year, he sent

18  an e-mail to JM, the mayor of the city of Kirkland,

19  Washington, containing a threatening to kidnap and injure

20  JM; specifically admits that he threatened to cause others

21  to enter her home, to, quote, unquote, "arrest her by law"

22  for offenses that Mr. Myrland felt had been committed

23  against him by police officers working for the city of

24  Kirkland.

25      Mr. Myrland further admits that he advised the mayor

1    not to resist as the people he was working with would be

2    heavily armed and authorized to use force by law.

3         Mr. Myrland admits that said e-mail was sent using

4    Microsoft Corporation's Hotmail service, and the e-mail was

5    routed through the server in San Antonio, Texas.

6         He further admits that he intended the e-mail to be

7    interpreted as a true threat by the recipient, JM.

8         Finally, Mr. Myrland admits that he had participated in

9    conversations in meetings with other individuals about

10   carrying out such threat, and that the threat and similar

11   threats were repeated in subsequent written and oral

12   communications with individuals in the city of Kirkland.

13              THE COURT:  Mr. Myrland, are all these facts true?

14              THE DEFENDANT:  Excuse me?

15        Yes, sir.

16              THE COURT:  Then at this point I will ask you to

17   stand.

18        Mr. Myrland, as to the charge contained in count 1 of

19   the indictment of transmission of threatening interstate

20   communication in violation of Title 18, United States Code,

21   Section 875(c), how do you plead, guilty or not guilty?

22              THE DEFENDANT:  Guilty.

23              THE COURT:  Thank you.  You may be seated.

24        Mr. Illa, are you aware of any reason why the Court

25   should not accept the plea of guilty?

                                                              22

1          MR. ILLA:  I know of no such reason, Your Honor.

2          THE COURT:  It is the finding of this court in the

3   case of the United States of America v. David Russell

4   Myrland that the defendant, Mr. Myrland, is fully competent

5   and capable of entering plea an informed plea; that is aware

6   of the nature of the charge and of the consequences of the

7   plea; and that the plea of guilty is made knowingly,

8   intelligently and voluntarily, and that the plea is

9   supported by an independent basis in fact containing each of

10   the essential elements of the offense.

11          I have therefore signed the report and recommendation

12   concerning plea of guilty.  Subject to the Court's

13   consideration of the plea agreement, and pursuant to Federal

14   Rule Of Criminal Procedure 11(e)((2), I recommend the Court

15   find the defendant guilty and impose sentence.

16          The clerk will provide copies of the report and

17   recommendation to both counsel.  Objections to it are waived

18   unless filed and served within 14 days.

19          Now Mr. Myrland, at this point our probation office

20   will become involved.  A probation officer will interview

21   you and will do some further background investigation about

22   you and about the facts of this case.

23          That background information will be summarized in the

24   form of what is called a "presentence report."

25          You and your attorney, and the attorney for the United

23

1        States, will have the opportunity to review the presentence

2        report and to file written objections to the report.

3             In addition, you and your attorney, and the attorney

4        for the United States will have the opportunity to speak

5        with the sentencing judge prior to the time that sentence is

6        imposed.

7             Do we have a sentencing date?

8                  THE CLERK:  We do, Your Honor, it has been

9        scheduled for October 21, and 10 o'clock, before Judge

10       Martinez.

11                 THE COURT:  Mr. Myrland, you will remain in

12       custody while you await sentencing.  You will, however,

13       receive credit against the sentence that is imposed -- the

14       amount of time that you are in custody and awaiting

15       sentencing.

16                 THE DEFENDANT:  Yes, sir.

17                 THE COURT:  Mr. Lombardi, is there anything

18       further at this time for the United States?

19                 MR. LOMBARDI:  No, thank you, Your Honor.

20                 THE COURT:  Mr. Illa, is there anything further

21       for Mr. Myrland?

22                 MR. ILLA:  Nothing, thank you, Your Honor.

23                 THE DEFENDANT:  Yes, excuse me?

24            Reflecting back for you alluded to sentencing

25       procedures, subject to the Court's consideration of the plea

**ACE Transcripts, Inc. (206) 467-6188**

1    agreement, could you elaborate, please?

2              THE COURT:  Yes, sir.

3        I make a recommendation -- it is a two-page report and

4    recommendation recommending that the plea be accepted in

5    this case, and what I am -- that is a statement saying that

6    it is subject to the terms of the plea agreement.

7        So the Court will review the plea agreement as part

8    of -- Judge Martinez will review part of the plea agreement

9    in the process of -- as well as the presentence report, in

10   determining what an appropriate sentence is.

11       So that is what my recommendation is, is based on --

12   based on what is in the plea agreement, I recommend that the

13   Court find that the defendant -- find that you are guilty in

14   this case.

15             THE DEFENDANT:  Thanks very much.

16             THE COURT:  You are welcome.

17        We will be in recess.

18             THE CLERK:  All rise.  The Court is in recess.

19             (End of proceedings for 7/27/2011)

20                         CERTIFICATE

21    I certify that the foregoing is a correct transcript from the

22   electronic sound recording of the proceedings in the above-

23   entitled matter.

24        /Brian J. Killgore/            February 7, 2012

25

                                                              25

AAERT Certified Electronic Court Reporter & Transcriber
License CERT*D-498

ACE Transcripts, Inc.
720 Queen Anne Ave. N. #311
Seattle, WA 98109
(206) 467-6188