HON. Richardo S. Martinez

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No.: **2:11-CR-00057-RSM** |
| **Plaintiff,** | |
| **v.** | **MOTION TO VACATE SENTENCE AND OVERTURN CONVICTION** |
| **DAVID R. MYRLAND,** | |
| **Defendant.** | **REQUEST FOR ORAL ARGUMENT** |

## I. INTRODUCTION.

1.1 COMES NOW, David R. Myrland (hereinafter "Defendant"), by and through his counsel, Gregory Mitchell, seeking the vacation of his sentence and conviction, as justice and due process requires. As an innocent individual, Defendant has a due process right to the full restoration of his rights through the reversal of his conviction. Defendant's first offer of proof is incorporated by this reference as if fully restated herein. ***Any and all emphasis*** employed herein may be construed to have been added.

1.2 FURTHER, Defendant's plea agreement, as a contract, does not reference 28 USC § 2255, which means all rights to file a motion to vacate sentence thereunder are preserved. (See *Cady v. US*, 970 F.Supp. 97 (#96-CV-1244 USDC N.Dist. of NY 1997)). In *Cady* plaintiff feared violation of plea agreement by filing § 2255 motion and sued for declaratory judgment prior to such a filing for preemptive ruling to avoid possible breach of plea agreement. Jurisdictional

defects can include the unconstitutionality of the charging statute as applied to a criminal defendant's conduct. (See *US v. Mercer*, 133 F.Supp. 288, 291 (CA9 1955); *US v. Caperell*, 938 F.2d 975, 977 (CA9 1991) (citing *US v. Montilla*, 870 F.2d 549 (CA9 1989) amended at 907 F.2d 115 (CA9 1990)). The Court's judgment of conviction is void *ab initio* and therefore cannot be validated by the passage of time, and can be challenged at any time.

1.3 Defendant is not barred from seeking the relief sought. A district court by definition abuses its discretion when it makes an error of law. (See *Koon v. US*, 518 US 81, 100 (1996) Rodney King defendant); *Strauss v. Comm'r*, 635 F.3d 1135, 1137 (CA9 2011 (citing *Koon, Id.*)). Error is plain where it is "clear and obvious." (See *US v. Recio*, 371 F.3d 1093, 1100 (CA9 2004) (quoting *US v. Fuchs*, 218 F.3d 957, 962 (CA9 2000)). A plea of guilty does not waive a claim that the charge is one which the government constitutionally may not prosecute. (See *US v. Cortez*, 973 F.2d 764, 766-67 (CA9 1992) (citing *Menna v. New York*, 423 US 61, 62 (1975), and *Blackledge v. Perry*, 417 US 20, 21 (1974)). The exception is derived from the fact that even though the guilty plea removes the question of the defendant's guilt from the case, the issue of whether the government had the power to bring the charge at all still remains. (See *Cortez* at 767, citing *Menna* at 62).

1.4 A showing of actual innocence is not time-barred. (See *McQuiggen v. Perkins*, 133 S.Ct. 1924 (2013); *Stewart v. Cate*, 734 F.3d 995, 1003 (CA9 2013) (citing *McQuiggen*)).

> ***"Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... [or] expiration of the statute of limitations."*** *McQuiggen v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (May 28, 2013). ***When an otherwise time-barred habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error," the Court may consider the petition on the merits.*** See *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court has recently cautioned, however, that "tenable actual-innocence gateway pleas are rare." *McQuiggen*, 133 S.Ct. at 1928. ***"[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."*** *Id.* (citing *Schlup*, 513 U.S. at 329, 115 S.Ct. 851); *see also House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (emphasizing that the *Schlup* standard is demanding and seldom met). This exacting standard sets an extremely high hurdle for Stewart. The *Schlup* standard

permits review only in the "extraordinary" case. *Schlup*, 513 U.S. at 324-27, 115 S.Ct. 851 (emphasizing that "in the vast majority of cases, claims of actual innocence are rarely successful"). Under *Schlup*, we must "assess how reasonable jurors would react to the overall, newly supplemented record," including all the evidence the petitioner now proffers. *Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011)."

*Stewart, id.*, at 1003.

1.5 In this case, the record itself reflects not just insufficient evidence to support the conviction, but that Defendant never issued a "true threat"; he is innocent. Clearly established law (authorities cited *infra*) provides that innocence is the failure to threaten to commit an act of unlawful violence in the first-person context against another individual or group of individuals. While incitement of others to injure or kill a presidential candidate is not such a threat (*Bagdasarian*, *infra*), for Defendant to be guilty his threatened incitement of others to believe that felony violations of the law had occurred must be affirmed as such a threat.

1.6 To punish a person for doing what the law plainly permits is a due process violation of the most basic sort. (See *Bordenkircher v. Hayes*, 434 US 357, 363 (1978); *US v. Goodwin*, 457 US 368, 372 (1982); *US v. Tarallo*, 380 F.3d 1174, 1194 (CA9 2004); *Nulph v. Cook*, 333 F.3d 1052, 1056 (CA9 2002); *White v. Ford Motor Co.*, 312 F.3d 998, 1019-20 (CA9 2000); *US v. Murphy*, 65 F.3d 758, 762 (CA9 1995)).

**Relief sought is justified for the reasons briefed herein:**

1. Actual innocence, absence of true threat, essential elements, protected speech.

2. Fair warning, void for vagueness.

1.5 The attached Offer of Proof and its exhibits are incorporated by this reference as if fully restated herein. Said exhibits are as follows:

**Ex. 1.** Dec. 2, 2011 sentencing transcript excerpts.

**Ex. 2.** Allocution letter(s).

**Ex. 3.** Indictment.

**Ex. 4.** Plea agreement.

**Ex. 5.** The original criminal complaint, contains text of email omitting "IF YOU HAVE EVIDENCE TO THE CONTRARY you may appear and present it to the panel."

Any untimeliness in the filing of this challenge is attributable to Defendant's having only been released from custody under this conviction on March 11, 2014, and his having had to obtain counsel while making very little money, living mostly on borrowed money. FURTHER, Defendant has had to prepare this briefing and other documents due to being able to afford only procedural aid from counsel. Defendant's rights to appeal expired on or about September 10, 2013, but his petition for filing in the U.S. Supreme Court got stuck in the mail in FCI Sandstone after Defendant's placement in halfway house in Seattle, WA, on Aug. 26, 2013.

## II. ARGUMENTS.

**Factual basis for conviction**:

2.1 Plaintiff will argue that Defendant's plea agreement waives all rights to challenge his conviction when, in fact, *in personam* jurisdiction has at all times been lacking. Said contract does not accuse Defendant of conduct that constitutes a "true threat," which shows Defendant to be innocent of the charge of such utterance in violation of 18 USC § 875(c), the charging statute. Defendant's allocution ("acceptance of responsibility letter") goes to great lengths to explain that he pled only to threatening only to share the public record with others who were willing to act under the law to arrest a known felon, as permitted by RCW 9A.16.020.

2.2 The relevant question for the purposes of establishing Defendant's innocence is not to determine what his utterance constitutes, but rather is what his utterance does not constitute. The Defendant's Aug. 30, 2010 email message to J.M. did not fit the definition of "true threat" and therefore does not meet the essential elements of the charging statute, 18 USC § 875(c).

2.3 Plaintiff intentionally and as a retaliatory prosecution singled the Defendant out due to his lawful speech, and did so to protect a public servant from the exercise of rights on the part of others who happened to view with disfavor the conduct proven by the public record. Evidence of this mode of enforcement on the part of the Defendants is the criminal case of *United States v. Myrland*, #2:11-cr-0057-RSM (USDC W.D. of WA at Seattle) wherein a forty month sentence was imposed upon the Defendant hereto for acting as described above. In Defendants' indictment (**Ex.3**

hereto) and plea agreement (**Ex.4** hereto) against the Plaintiff, the term "arrest" was placed in quotes by the Plaintiff:

> **Indictment**: Defendant "threatened to use force to enter J.M.'s home and "arrest" her."

> **Plea agreement**: "Specifically, Defendant threatened to *cause others* to enter J.M.'s home and "*arrest*" her by law[.]" (Emphasis added).

2.4 Plaintiff acknowledges that Defendant told the suspected felon only that he intended to cause her "lawful arrest" by sharing with others documents from the public record. The prosecution describes Defendant's intended conduct as this:

> "These are the people that Mr. Myrland picked as the group of citizens that he's going to present his complaints and legal theories to about whether the mayor, or the city attorney, or whomever, are subject to arrest for committing felonies."

See **Ex.1** hereto, Dec. 2, 2011 sentencing transcript at pg. 9 ln.8-12.

2.5 The Defendant's Aug. 30, 2010 email message purportedly constituting such a threat read as follows:

> "On Friday, Sept. 3, 2010, I, David Russell Myrland, will apply to a panel of Americans to offer evidence of felonious conduct on your part, which constitutes an ongoing threat to Public Safety, hoping to cause the issuance of a WRIT OF PROBABLE CAUSE to substantiate the arrest of your person under RCW 9A.16.020.
> Upon the issuance of said Writ, 50 or more concerned Citizens with knowledge of your crimes will enter your home and arrest you, to take you to competent authorities as provided by law. DO NOT RESIST as these Citizens will be heavily armed and will meet all resistance with all necessary force, as provided by law. IF YOU HAVE EVIDENCE TO THE CONTRARY you are hereby notified that the hearing upon my application for said Writ will take place at: (address omitted). If you default or otherwise do not appear, and if my application is granted, I would advise you to keep your front and back doors to your home UNLOCKED to better facilitate your lawful arrest."

*End email*. See **Ex.5** hereto, original complaint in this case, at its pg.5 ¶17.

2.6 The sentencing Court, too, recognizes that Defendant intended only to provide others with a copy of the public record of criminal complaints Defendant had already filed with authorities against Kirkland officials and employees. The Court's description of Defendant's intended conduct is as follows:

"In all of your writings you engage in this fiction that you are simply communicating information to others and <u>whatever they did</u> with the information, it wasn't your fault. So if fifty armed county rangers or sovereign citizens, or whatever they want to call themselves, <u>showed up at the mayor's house to arrest her</u>, that you had no responsibility for <u>whatever might</u> happen. And <u>what if</u> she were hurt, or injured, or killed, because she was in fear, terrified? Well again, not your fault, <u>you simply provided information to other people</u>."

*See* **Ex.1** hereto, Dec. 2, 2011 sentencing transcript at pg.56 ln.6-15. <u>The term "writings" is a reference to</u> Defendant's allocutions attached hereto at **Ex.2**.

2.7 In this there is no mention of any unlawful act, let alone a violent act, only sharing information, "present[ing] his complaints," and the mere *possibility* of negligence on the part of those who believe a felony has been committed in their own "lawful arrest" of the felon, negligence which is <u>not at all mentioned or threatened in the subject email</u>. Only in the Court's own hypotheticals ("what if" - "whatever might" - "whatever they did") are there any manifestations of harm of any kind.

2.8 In Defendant's July 27, 2011 plea agreement he admitted to "threatened to cause others to enter J.M.'s home to "arrest" here by law[.]" Sharing public record to prove to others that felony violations of law had occurred, a harmless arrest and delivery to authorities by others, without involving the Defendant, as permitted "by law" - No unlawful violence, *a fortiori*, just protected speech. The Revised Code of Washington states:

> RCW 9A.16.020 Use of force - When lawful.- ***The use, attempt, <u>or offer</u> to use force upon or toward the person of another is not unlawful in the following cases***:
>  (1) whenever necessarily used by a public officer[.]
>  (2) ***whenever necessarily used by a person arresting one who has committed a felony*** and delivering him or her to a public officer competent to receive him or her into custody.
>  (3) ***whenever necessarily used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense*** against his or her person, or a malicious trespass, or other malicious interference with real or personal property in his or her possession, in case the force is not more than in necessary.

2.9 Subsection (1) of this RCW is the source of WA law enforcement personnel's authority to use force or to make an arrest. (See *Brooks v. City of Seattle*, 599 F.3d 1018 (CA9 2009); <u>W. Dist. of WA at Seattle</u> cases: *Wakagira v. City of Seattle*, #08-1108-JLR (8/3/09); *Martinez v. US*, #08-265-JLR (8/3/09); *John v. Berry*, 469 F.Supp. 922 (2006); <u>E. Dist. of WA at Spokane</u> cases: *Logan v. Weatherly*, #CV-04-214-FVS (6/6/06); *Logan v. City of Pullman Police Dept.*,

#CV-04-214FVS (6/13/06)). How does an act under subsection (1) survive as lawful when an act under subsection (2) constitutes a crime?

**Actual innocence**:

2.10 The record of Plaintiff's own depiction of the alleged offense clearly shows that the Defendant issued no true threat and is therefore innocent. To allow his conviction to stand would constitute a fundamental error and miscarriage of justice. (See *Coleman v. Thompson*, 501 US 722, 750 (1991); *Murray v. Carrier*, 477 US 478, 496 (1986); *Schlup v. Delo*, 513 US 298, 324 (1995); *House v. Bell*, 547 US 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)).

2.11 A credible claim of actual innocence is the strongest equitable claim on the prisoner's side. (See *Lee v. Lampert*, 653 F.3d 929 (CA9 2011) (citing *Withrow v. Williams*, 507 U.S. 680, 700, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (O'Connor, J., concurring in part and dissenting in part) (noting that the Supreme Court "continuously has recognized that ... a sufficient showing of actual innocence" is normally enough, "standing alone, to outweigh other concerns and justify adjudication of the prisoner's constitutional claim"). Indeed, "the individual interest in avoiding injustice is most compelling in the context of actual innocence." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851)).

**Protected speech and "true threats"**:

2.12 Defendant sent an email to J.M. on Aug. 30, 2010 which expressed his intent to "present his complaints and legal theories" to others who, if convinced that J.M. had committed one or more felony violations of WA state or federal law, would likely perform the citizen's arrest of her person as permitted by RCW 9A.16.020. As proven herein, to be guilty of having issued a "true threat" the Defendant has to have threatened to commit and act of unlawful violence in the first-person context. Two examples of federal statutes below that prohibit "true threats" are 18 USC § 879 which relates to presidential candidates, and 18 USC § 875 which deals generally with threats made to another individual. The charging statute in this case:

18 USC § 875. Interstate communications.

(a) Whoever transmits in interstate or foreign commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined under this title or imprisoned not more than twenty years, or both.

(b) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than twenty years, or both.

(c) *Whoever transmits* in interstate or foreign commerce any communication containing *any threat* to kidnap any person or any threat *to injure the person of another*, shall be fined under this title or imprisoned not more than five years, or both.

(d) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

18 USC § 879. Threats against former Presidents and certain other persons

(a) Whoever *knowingly and willfully threatens to kill, kidnap, or inflict bodily harm upon-*

(1) *a former President or a member of the immediate family* of a former President;

(2) *a member of the immediate family of the President, the President-elect, the Vice President, or the Vice President-elect*;

(3) *a major candidate for the office of President or Vice President, or a member of the immediate family of such candidate*; or

(4) *a person protected by the Secret Service* under section 3056(a)(6);

*shall be fined under this title or imprisoned not more than 5 years, or both*.

2.13 To be guilty under these statutes one has to have uttered what is called a "true threat," which is a threat to commit an act of "unlawful violence" again an individual or group of individuals. (See *US v. Bagdasarian*, 652 F.3d 1113 (CA9 **July 19, 2011**) (citing *Virginia v. Black*, 538 US 343 (2003) overturning conviction under **18 USC § 879**);  see also *US v. Twine*, 853 F.2d 676 (CA9 1988); *US v. Sutcliffe*, 505 F.3d 944  (CA9 2007)). An example of such a threat might be:

"I will kill you . . . I am now armed[.]"

See *Sutcliffe, id.* at 951.

2.14 But in *Bagdasarian* the nature of the threat was contextually third-person, not first-person:

**Defendant Walter Bagdasarian said (about presidential candidate Obama) on a blog:**

"Re: Obama f**k the niggar, he will have a 50 cal. in the head pretty soon."

"Shoot the nig, country f**ked for another 4 years+ What nig has done ANYTHING right???? long term???? never in history, except sambos."

"Re: And so it begins."

"Pistol? Dude, Josh needs to get us one of these, just shoot the nigga's car and POOF!"

**On July 19, 2011 the 9th Circuit ruled:**

"[I]t does not convey the notion that Bagdasarian himself had plans to fulfill the prediction[.]"

"Neither does the . . . statement reflect the defendant's intent to threaten that he himself would kill or injure Obama."

"The statement makes no reference to Bagdasarian himself and so [it] cannot reasonably be taken to express his intent to shoot Obama."

". . . fail to express an intent on his part to take any action. . ."

". . . is not sufficient to establish that he intended to threaten Obama himself."

"As we have explained, *supra* at 9808-13, that neither of Bagdasarian's statements on its face constitutes a true threat unprotected by the First Amendment. Most significantly, one is predictive and the other, exhortatory. For the same reasons, the evidence is not sufficient for any reasonable finder of fact to have concluded beyond a reasonable doubt that Bagdasarian intended his statements to be taken as threats. See *Jackson*, 443 US at 319."

"But, as we have explained, incitement [of others] to injure or kill a presidential candidate does not qualify as an offense under 18 USC § 879(a)(3)."

***End quotes of Bagdasarian decision.*

2.15 The threatened conduct must constitute unlawful violence, and the threat must express a first-person intent on the part of the speaker to so act. Incitement of others to kill or injure a presidential candidate is not an offense. More importantly, for our purposes, the arrest of a felon is entirely legal; it is not unlawful violence.

"[P]utting certain individuals in harm's way by singling them out for the attentions of violent but unrelated third parties is [conduct] protected by the First Amendment."

See *Sheehan v. Gregoire*, 272 F.Supp.2d 1135, 1149-50 (US Dist. Court, Western District of WA at Seattle 2003) (citing Planned Parenthood, 290 F.3d 1063)).

"The Court [*Virginia v. Black*] laid great weight on the intent requirement. It offered this definition of unprotected "true threats" and "intimidation":

> "True threats" encompass those statements where ***the speaker means to communicate a serious expression of an intent to commit an <u>act of unlawful violence</u>*** to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. . . . Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in ***fear of bodily harm or death***. *Id.* at 359-60 (citations omitted). The clear import of this definition is that only intentional threats are criminally punishable consistently with the First Amendment. First, the definition requires that "the speaker means to communicate . . . an intent to commit ***an <u>act of unlawful violence</u>***." A natural reading of this language embraces not only the requirement that the communication itself be intentional, but also the requirement that the speaker intend for his language ***to threaten the victim***."

> "The Court's insistence on ***intent to threaten*** as the *sine qua non* of a constitutionally punishable threat is especially clear from its ultimate holding that the Virginia statute was unconstitutional precisely because the element of intent was effectively eliminated by the statute's provision rendering any burning of a cross on the property of another "prima facie evidence of an intent to intimidate.""

See *United States v. Cassel*, 408 F.3d 622, 631 (CA9 2004) (quoting *Virginia v. Black*, 538 U.S. 343, 155 L. Ed. 2d 535, 123 S. Ct. 1536 (2003)). <u>See also</u> *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, (CA9 2002); *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 422 F.3d 949 (CA9 2005).

2.16 Defendant is accused of alluding to an "arrest" in the subject email. Inasmuch as RCW 9A.16.020 is also law enforcement's source of authority to make an arrest, any such mention on the part of law enforcement personnel would be a "true threat" as well. (See *Brooks v. City of Seattle*, 599 F.3d 1018 (CA9 2009); <u>W. Dist. of WA at Seattle cases</u>: *Wakagira v. City of Seattle*, #08-1108-JLR (8/3/09); *Martinez v. US*, #08-265-JLR (8/3/09); *John v . Berry*, 469 F.Supp. 922 (2006); <u>E. Dist. of WA at Spokane cases</u>: *Logan v. Weatherly*, #CV-04-214-FVS (6/6/06); *Logan v. City of Pullman Police Dept.*, #CV-04-214 FVS (6/13/06).)

2.17 Defendant struggles to define the difference between his sharing the public record with others, and such sharing on the part of media outlets, or even by others who have won favor in this very Court. (See *Sheehan*, *supra*). Defendant has every right, per *Sheehan*, to publish his entire administrative public record with the City of Kirkland on the world wide web to share with 7+ billion people, but it's a threat to commit an act of unlawful violence to notify one incriminated thereby of his intent to so publish. The media can publish all the information it acquires and cannot be held liable for what others do with the information, but the Defendant is held responsible for others who act "as provided by law" based on information from the public record that he provides or discloses. This affront to the First Amendment clearly and unconstitutionally applies only to a specific speaker; the Defendant.

**Citizen's arrest:**

2.18 The authorities below suffice to prove the legality of the arrest of the person of a suspected felon without a warrant by a private person acting upon reasonable cause and suspicion as a clearly established right. The right of citizen's arrest extends to any felony violation, state or federal, and is governed by state law. (See *Brady v. US*, 300 F. 540 (CA6 1924); *US v. Coplon*, 185 F.2d 629 (CA2 1950); *Richardson v. US*, 217 F.2d 696 (CA8 1954); *Ward v. US*, 316 F.2d 113 (CA9 1963); *Elkanich v. US*, 327 F.2d 417 (CA9 1964); *US v. Swarovski*, 557 F.2d 40 (CA2 1977); *Dorsey v. US*, 174 F.2d.899 (CA5 1949)).

> "The rule seems to be similar when as arrest is a so-called citizen's arrest, made by one not a law enforcement officer, it requires reasonable cause to believe the arrested party guilty of a felony before the arrest will support a search and seizure of evidence of crime. Information, belief, or suspicion as to commission of a felony, as jurisdiction for arrest by a private person without a warrant; 133 A.L.R. 608 (1941)"

See *State v. Jack*, 63 Wn.2d 632, 388 P.2d 566 (1964); see also *State v. Darst*, 65 Wn.2d 808, 811-12, 399 P.2d 618 (1965); *State v. Williams*, 27 Wn.App. 848, 621 P.2d 176 (1980); *State v. Harp*, 13 Wn.App. 239, 534 P.2d 842 (1975); *State v. Clarke*, 61 Wn.2d 138, 377 P.2d 449 (1962)).

2.19 In relation to citizen's arrest, a state may even derogate to extend the right to apply to the arrest of one who has committed a mere misdemeanor.

"In Arizona, statutes that are in derogation of the common law are strictly construed. See *Foundation Dev. Corp. v. Loehmann's*, 163 Ariz. 438, 444, 788 P.2d 1189, 1195 (1990). In the case of misdemeanors such as shoplifting, there is no common law privilege of arrest. *Gortarez v. Smitty's Super Valu, Inc.*, 140 Ariz. 97, 102, 680 P.2d 807, 812 (1984). A.R.S. § 13-1805 is in derogation of the common law because it allows private individuals to detain persons suspected of shoplifting. Therefore, A.R.S. § 13-1805 must be strictly construed to only permit detention of "persons suspected" of shoplifting."

See *Shelburg v. City of Scottsdale*, #CV-09-1800-PHX-NVW, USDC Arizona (8/23/2010).

2.20 Recent decisions relating to citizen's arrest include *US v. Fulbright*, 105 F.3d 443 (CA9 1995) in **MT**; *US v. Grigg*, 498 F.3d 1070 (CA9 2007) in **OR**; *Tekle v. US*, 457 F.3d 1088 (CA9 2005) in **CA**; *Rhomberg v. Wilson*, 108 F.3d 339 (CA9 1996) in **CA**; *Collins v. Womancare*, 878 F.2d 1145 (CA9 1989); *Hopkins v. Bonvicino*, 573 F.3d 752 (CA9 2008).

"Under all of the facts it is established to my satisfaction that the arrest was lawful and the search incident to it. This made the evidence admissible. Reasonable cause to believe that felony has been committed and the arrested person committed it are sufficient to legalize the arrest even if made by private citizens. (See *Fernandez v. Klinger*, 346 F.2d 210, 211-12 (CA9 1965); *Elkanich v. US*, 327 F.2d 417 (CA9 1964), cert. den. 377 US 917; *Ward v. US*, 316 F.2d 113 (CA9 1963), cert. den. 375 US 862; *Richardson v. US*, 217 F.2d 696 (CA8 1964); *US v. Coplon*, 185 F.2d 629, 634, 28 A.L.R.2d 1041 (CA2 1950), cert. den. 342 US 920; *Dorsey v. US*, 174 F.2d 899 (CA6 1949), cert. den. 388 US 950 and 340 US 878; *State v. McClung*, 66 Wash.2d 654, 404 P.2d 460 (1965)."

See *Jack v. Rhay*, 366 F.2d 191 (CA9 1966). ***And* -**

"In California, the defense of citizen's arrest mandates in pertinent part that a private person may arrest another for a public offense committed or attempted in his presence. See Cal. Penal Code § 837. "An arrest is taking a person into custody, in a case and in the manner authorized by law. An arrest may be made by a peace officer or by a private person." *Id.* § 834."

See *Huang v. McEwen*, Civil #09-0355-PA-JCG (USDC Central Dist. of Cal. April 26, 2012).

2.21 This collection of relevant decisions, from appellate and district courts across the country, make clear and firmly establishes that the right to arrest a felon at large is entirely legal for anyone who has reasonable suspicion that the person to be arrested is indeed guilty of having committed the crime. The Supreme Court has held that:

"[W]e have referred to the Court of Appeals when enquiring whether a right was "clearly

established." "

See *United States v. Lanier*, 520 US 259, 269, 137 L.Ed.2d 432, 117 S.Ct. 1219 (1997) (citing *Mitchell v. Forsyth*, 427 US 511, 533, 86 L.Ed.2d 411, 105 S.Ct. 2806 (1985); *Davis v. Scherer*, 468 US 183, 191-92, 82 L.Ed.2d. 139, 104 S.Ct. 3012 (1984); *Elder v. Halloway*, 510 US 510, 516, 127 L.Ed.2d 344, 114 S.Ct. 1019 (1994) (treating Court of Appeals decisions as "relevant authority" that must be considered as part of qualified immunity enquiry)).

2.22 It is also clear that the individual's right to arrest a felon at large is independent of the opinion and discretion of governmental authorities, that it doesn't require the intervention of the courts, that no prior approval on the part of law enforcement authorities need be sought in advance of making such an arrest. Nowhere was there any mention of an exclusion of any particular felon or felony violation from this clearly established right.

2.23 Per *Bagdasarian*, one could incite others to kill, even if unwarranted or unjustified, without committing an act of unlawful violence. What unlawful act was threatened, and which law prohibits it? This is the least Defendant may expect. Since the prosecution's own words at sentencing show that Defendant sought only to incite others to believe a felony had been committed, his conviction is null and void *ab initio*, and must therefore be overturned.

**Void for vagueness & fair warning:**

2.24 There is no precedent whatsoever for punishing an individual for threatening to share evidence of perceived criminal misconduct; this case is a first. Authorities already cited show that one must utter a threat to commit an act of unlawful violence against the person of another, yet, if Defendant followed through with all he mentioned in the subject email, he would have shared the public record with others, and others who have the right to arrest a felon *may have* followed through to indeed perform the arrest of J.M., the recipient of the email.

2.25 Nowhere in the charging statute or in precedent is there any description of or reference to any conduct remotely similar being violative in any way. Until such time as Plaintiff identifies an act of unlawful violence Defendant threatened to commit, and which law the act would violate, *e.g.*, presenting his complaints and legal theories to others, communicating information to others, then the charging statute must be seen as void for vagueness in this instance. To uphold Defendant's conviction forces the public to speculate as to what is and is not permissible or protected speech.

"Specifically, Defendant admits to threatening to *cause others* to enter J.M.'s home and *arrest her* by law[.]" (Emphasis added).

2.26 This is what Defendant [threatened] to do; it's legal. Even the plea agreement in this case fails to accuse the Defendant of a crime; no unlawful violence, in first-person context or otherwise, <u>no true threat</u>.

2.27 A statute is unconstitutionally vague on its face if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." (See *US v. Williams*, 553 US 285, 128 S.Ct. 1830, 1845 (2008)). "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first element of due process of law." (See *Connally v. General Const. Co.*, 269 US 385, 391 (1926)). "All are entitled to know what the State commands or forbids." (See *Lanzetta v. New Jersey*, 306 US 451, 453 (1939)).

2.28 Vague statutes are invalidated for three reasons: (1) to avoid punishing people for behavior that they could not have know was illegal; (2) to avoid subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on First Amendment freedoms. (See *Humanitarian Law Project v. Mukasey*, 552 F.3d 916, 928 (CA9 2009) (quoting *Fotu v. City of Menlo Park*, 146 F.3d 629, 638 (CA9 1998)).

2.29 "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit and act of unlawful violence to a particular individual or group of individuals." (See *Virginia v. Black*, 538 US 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (citing *Watts v. US*, 394 US 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969): *R.A.V. v. City of St. Paul*, 505 US 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1991)).

2.30 "There are three manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (cites omitted). Second, as sort of junior of the vagueness doctrine, H. Packer, <u>The Limits of Criminal Sanction 95</u> (1968), the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. (cites omitted). Third, although clarity at the requisite

level may be supplied by judicial gloss on an otherwise uncertain statute, (cites omitted), due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. (cites omitted). In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." (See *US v. Lanier*, 520 US 259, 266-67, 137 L.Ed.2d 432, 117 S.Ct. 1219 (1997)).

2.31 If Congress has prohibited "present[ing] his complaints and legal theories" from the public record to others, or even the making of the citizen's arrest of a felon at large "as provided by law," the charging statute fails to inform the reader that such conduct constitutes the statute's "threaten to . . . injure" prohibition. Which of these acts is unlawful, and what law would such acts violate? Defendant isn't even accused of the latter.

**Due process**:

2.32 Defendant's conviction punishes protected speech, it punishes him for conduct permitted under clearly established law, and was made while the Court lacked *in personam* jurisdiction, *a fortiori*, the judgment of conviction is void *ab initio*. Defendant is therefore relieved of all time or deadline constraints otherwise imposed upon a party seeking to overturn a conviction. The charging statute fails to make clear that Defendant's conduct (sharing the public record with others) constitutes a threat to injure. For the reasons stated herein Defendant's sentence should be vacated.

"An offense created by [an unconstitutional law]," the Court has held, "is not a crime." *Ex parte Seibold*, 100 US 371, 376, 25 L.Ed. 717 (1880). "*A conviction under [such a law] is not merely erroneous, but it is illegal and void, and cannot be a legal cause of imprisonment*." *Id.*, at 376-77. *If a law is invalid as applied to the criminal defendant's conduct, the defendant is entitled to go free*.
"For this reason, a court has no "prudential" license to decline to consider whether the statute under which the defendant has been charged lacks constitutional application to her conduct. And that is so even where the constitutional provision that would render the conviction void is directed at protecting a party not before the Court. Our decisions concerning criminal laws infected with discrimination are illustrative. The Court must entertain the objection—and reverse the conviction—even if the right to equal treatment resides in someone other than the defendant. See *Eisenstadt v. Baird*, 405 US 438, 452-455 (1972) (*reversing conviction for distributing contraceptives because the law banning distribution violated the recipient's right to equal protection*); cf. *Craig v. Boren*, 429 U.S. 190, 192, 210, and n.24 (1976) (*law penalizing sale of beer to males but not females aged 18 to 20 could not be enforced against vendor*). See also *Grayned v. City of Rockford*, 408

U.S. 104, 107, n. 2 (1972); *Welsh v. United States,* 398 U.S. 333, 361-362 (1970) (Harlan, J., concurring in result) (***reversal required even if, going forward, Congress would cure the unequal treatment by extending rather than invalidating the criminal proscription***).

"In short, a law "beyond the power of Congress," for any reason, is "no law at all." *Nigro v. United States,* 276 U.S. 332, 341 (1928). ***The validity of Bond's conviction depends upon whether the Constitution permits Congress to enact § 229. Her claim that it does not must be considered and decided on the merits.***"

See *Bond v. United States,* 131 S.Ct. 2355, 180 L.Ed.2d 269 (June 16, 2011) (Ginsburg, J., separate concurring opinion, joined by Beyer, J.); see also *Fay v. Noia,* 372 US 391, 408, 9 L.Ed.2d 837, 83 S.Ct. 822 (1963) (citing *Seibold, id.*).

2.33 As a mere notice of an intent to share the public record with "others," Defendant's utterance via email makes no threat to commit any act of unlawful violence and thus is no "true threat." Defendant's email urged against resistance to prevent harm to the recipient, and told of an opportunity to present evidence of innocence to avert altogether the "lawful arrest" of the recipient.

2.34 The only thing binding Defendant to his conviction is a plea agreement that states no claim. Plaintiff's burden is to cite and interpret the law that prohibits as an act of violence Defendant's "present[ation] [of] his complaints and legal theories to" others, his communicating of information to others. (See **Ex.1** pg.9 of transcript at ln.8-12). In Plaintiff's own words, and by the words of this Court, this is what Defendant stands accused of. At all times the Plaintiff and the Court have failed to allege an offense under the charging statute. The Court's ruling that sharing the public record is an act of unlawful violence is plain error.

///
///
///
///

2.35 Incitement of others to kill or injure a presidential candidate is protected speech, while, in this case, incitement of others to believe a felony has been committed by sharing evidence from the public record is a prohibited act of violence because others would do what the law permits. The "true threat" which must bind the Defendant to his conviction does not exist.

## III. RELIEF REQUESTED.

3.1 Plaintiff's burden is clear. Until such time as Plaintiff identifies the law which prohibits as an act of violence Defendant's "presenting his complaints [from public record] and legal

theories" with other people, the existence of a true threat has not been proven. Plaintiff has never perceived a first-person threat to commit an act of unlawful violence in the subject email message, as evidenced by the indictment, plea agreement, and Plaintiff's description at sentencing of the conduct complained of.

     3.2 Even the Court's description of Defendant's conduct at sentencing reveals that the act he sought to commit was merely to "provide information to other people." Accordingly, the Defendant's conviction must be overturned.

Respectfully submitted:                Date:

_____        December 2, 2014_____

Gregory C. Mitchell
Attorney for David Myrland

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **No.: 2:11-CR-00057-RSM** |
| **Plaintiff,** | |
| **v.** | **ORDER ON MOTION TO VACATE** |
| **DAVID R. MYRLAND,** | |
| **Defendant.** | |

David R. Myrland, Defendant, presented a motion for order vacating conviction to this court. The court having considered the motion, declaration(s), testimony and the court file, and finding good cause,

*It is Ordered:*

Motion to Vacate is Granted / Denied

Dated:_____          _____

                                                    Judge

*Order on Vacate*                    *- Page 1 of 2*                    Law Office of Gregory C Mitchell
                                                                        420 123rd St E.
                                                                        Tacoma, WA 98445
                                                                        253-324-5064

1

2    Presented by:                          Approved for entry:

3

4    _____          _____

5    Gregory C. Mitchell
     Attorney for David R Myrland           Asst.  U.S. Attorney
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Order on Vacate*              *- Page 2 of 2*              Law Office of Gregory C Mitchell
                                                            420 123rd St E.
                                                            Tacoma, WA 98445
                                                            253-324-5064