Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

At Seattle, WA

| | | |
|---|---|---|
| UNITED STATES,<br>Plaintiff, | )<br>)<br>) | No. **2:11-cr-00057-RSM** |
| | )<br>) | MANDATORY JUDICIAL NOTICE and<br>first Offer of Proof. |
| vs. | )<br>)<br>)<br>) | |
| David R. Myrland,<br>Defendant. | )<br>) | |

## MANDATORY JUDICIAL NOTICE & OFFER OF PROOF.

COMES NOW, Defendant above named, seeking to support his contention that his conviction should be overturned. The Court shall take judicial notice of the authorities cited herein, and the facts proven by the record and further by the exhibits attached hereto, which are incorporated by this reference as if fully restated herein. *Any and all emphasis* employed herein may be construed to have been added. Exhibits to this Offer of Proof are as follows:

**Ex. 1.** Dec. 2, 2011 sentencing transcript excerpts.

**Ex. 2.** Allocution letter(s).

**Ex. 3.** Indictment.

**Ex. 4.** Plea agreement.

**Ex. 5.** The original criminal complaint, contains text of email omitting "IF YOU HAVE EVIDENCE TO THE CONTRARY you may appear and present it to the panel."

A plea agreement is a contract and is enforced as such. (See *US v . Allen*, 434 F.3d 1166, 1174 (CA9 2005) (citing *US v. Mondragon*, 228 F.3d 978, 980 (CA9 2000), and *US v . Johnson*, 187 F .3d 1129, 1134 (CA9 1999)). The plea agreement in this case contains no details of the conduct Defendant was to engage in to "cause others" to act, so Defendant detailed this in his correspondence to the Court at **Exhibit 2** hereto. Plaintiff felt free to act in tacit acquiescence to Defendant's contract supplement, clarification, and glossary of terms, and is acting upon them to this day, *e.g.*, restitution, drug testing, loss of fundamental and political rights, access to Defendant's residence without a warrant, warrantless searches, etc..

Defendant was convicted of threatening a suspected felon with sharing the public record with others who wanted to view it. In the Court's opinion, this justified the imposition of a 40 month sentence to be served in federal prison.

> "The facts in the plea agreement ("to cause others to" arrest J.M.) and the contrast to the indictment ("threatened to arrest J.M.") should explain why the question existed in the first lace. How could my informing J.M. that I intended to share the truth about her with others who, if they agreed that J.M. is a felon, constitute a threat to "kidnap and injure" her? The prosecution's language in the plea agreement reflects what I explained at my April 1, 2011 proffer interview, that I intended only to share evidence of crime with others who stated that they'd likely arrest any felon who had victimized me and who was likely to commit other offenses, and would do so within the limits of RCW 9A.16.020. I never intended, or threatened, to arrest anyone; I threatened only to share evidence and to provide testimony. This is what the prosecution says that I have done, it is what I pied guilty to having done, and this is what I am taking full responsibility for having done; nothing more."

See **Ex.2** hereto, Defendant's acceptance of responsibility letter to presentencing investigator, S. McNikels, at pg.1 of 37. Also on pg.2:

> "One particular problem I had with the way my meeting with you was handled relates to the bar against discussion of "offense conduct." I avoided such discussion, but Stephan quickly offered a comparison of points in Charles Wilson's and Charles Habermann's instances, which clearly lends itself to the presumption that I threatened direct action against J.M., just as Wilson and Habermann threatened direct unlawful violence (death threats) against Senator P. Murray and Representative J. McDermott, respectively, and it did not at all allow for a consideration of the facts in the plea agreement which indicate that I intended only to ask others if they agree with me that J.M. was and is a felon. I knew when the meeting was over that this false perception

would adversely mis-shape your opinion of me and your assessment of the .severity of the conduct to which I pled. The "true threat" in this case is the sharing of information with others whom I would approach for concurrence with; or rejection of, my impression of the mayor of the City of Kirkland, Joan McBride.

When you add points to your sentencing recommendation for intent to carry out the threat, it is an enhancement for intent to share information with others. Enhancement(s) for multiple threats to share information, threats to share information made to a public servant, these are the basis for any recommended enhancements."

**Ex.2** pg.3:

Kirkland has told you that I don't believe that WA law applies to me, which is patently false. If I lied to you in this presentencing process what would happen to me? If I didn't believe that WA law applied to me, would I keep my pistol unloaded and in plain sight while driving my car, as the law requires? Would I demand a contested hearing on a traffic citation? Would I file a motion to vacate a judgment as provided by law, would I have sued Kirkland in 2005 under RCW 42.17 Public Disclosure Act when I won $15,055.00 (U.S.)? I can't use unnecessary force, I can't burglarize a home, I can't vandalize private property; the law prohibits me from doing so, not that I need laws to bind me therefrom.

Kirkland, on the other hand, is required to hear my 2003 motion to vacate and refuses, it is required to correct the suspension of my driver's license which it caused but it refuses, and Kirkland was required to give me back my car's bill of sale so I could redeem it from impound but it refused and I lost my stolen car at auction at the instruction of Kirkland's mayor. Kirkland does not believe that WA state law applies to it, its officials, or its employees; it's correct. I was given one choice to avoid the dilemma I now face; abandon my property rights, which I should have done. The next time Kirkland steals my car I promise to just walk away and to shut my mouth, lest I go to prison. Every protest is a "true threat."

**Ex.2** pg.10:

Between May 2009 and July 2010 I filed perhaps 450-500 pages of complaints w/exhibits in Kirkland and was utterly ignored until 1 :30 pm on Aug. 3, 2010, when I was walking on a sidewalk in Kirkland, on 132nd Ave. NE several blocks south of 75th street. I was walking on the left side of the street when a Kirkland police patrol car pulled into a driveway approx. 120' in front of me to block my path. As I approached, the officer emerged from the patrol car wearing body armor and many weapons, telling me, "I know you've got a right to do what you're doing."

I said, "Okay."

"Well, we got a call about you." he replied.

"About me walking?" I asked.

"Yep." he replied.

I said, "Okay," and continued my walk without ever having broken stride and without engaging or indulging the officer further; without looking back. Thereafter, late at night, I experienced unmanageable symptoms of stress such as nausea and hyper

ventilation, on my knees unable to stand, fading consciousness. On Aug. 31, 2010 I came to wonder how close to death I was during that encounter, and what the outcome would have been if I had stopped to speak with the officer, for that was the day on which the Seattle police shot that Native American man to death downtown for nothing.

**Ex.2** pg.13:

Agent Dean read my criminal complaints and motion to dismiss with its exhibits, learning that Kirkland conspired to deprive me of my liberty and my property under the license suspension it caused, that Kirkland knows it caused the suspension of my license and refused to correct it, that Kirkland was demanding money from me through the mail for RCW enforcement, that Kirkland was demanding money from me through the mail for traffic fines it knows are derived from having deprived me of hearings, that Kirkland refuses to correct its records to use the correct address it's had for years due to all of the litigation with me, that Kirkland arrested me with knowledge that I had been deprived of notice and opportunity to defend, that Kirkland stole my automobile, my bill of sale, and my firearm, and that Kirkland and King County brought false felony charges against me in state court by calling all of this "official actions" in a conspiracy to take an untold number of months/years of my life away with false imprisonment, and Agent Dean then charges me with "threatening to kidnap and injure" the party most responsible over my mere emailed promise to share this information with others who may arrest, attempt to arrest, or offer to arrest said conspirator as provided by RCW 9A.16.020 under their own control and in their own discretion and as a matter of public safety, as I stated in my email to Joan McBride.

In Dean's original complaint upon which the Jan. 25, 2011 search of my home and the arrest of my person was based, Dean calls all of this Joan McBride's mere "failure to resolve a legal problem." Kirkland is above the law, specifically 18 USC 3, 4, 241, 242, 876(d), 1341, etc.

**Ex.2** pg.13-14:

Inasmuch as all of this is known to the prosecution in this case, disclosed to the plaintiff at length at my April 1, 2011 proffer interview, I recognize the ongoing pursuit of my guilty plea to mean that my intent to show others (citizens' review panel) the evidence supporting my allegations of criminal misconduct is prohibited, and my statement of intent to share any concurrence on their part with others who may make a lawful RCW 9A.16.020 arrest of the felons involved is a "threat to kidnap and injure" said felons under the U.S. government's definition of those terms. Nobody, including Kirkland's city attorney and King County's elected prosecutor, has ever denied my accusations which I made in approx. 500 pages of criminal complaints between May 9, 2009 and Aug. 12, 2010 and in the two criminal complaints I filed in King County Superior Court in my state case prior to my Oct. 7, 2010 arraignment, many of which are relating to or made under WA state felony statutes, and from this I believe I've reasollably established probable cause to satisfy acting under RCW 9A.16.020. As I understand it, any "offer" to use force I make pursuant to that statute "is not unlawful" until I make such an "offer" via email where such an "offer" constitutes a "threat to

kidnap and injure" the person of the known felon receiving the "offer" due to the federal government's definition of "threat," "kidnap," and of "injure."

I have to confess ignorance and surprise as to this difference or discrepancy between WA state law and 18 USC 875(c). It was not until February 2011 that I learned the difference when this court ruled that any letter from someone in Texas is my own true threat, a sworn statement of concurrence from fifteen or so others is my own true threat, and that my mere opinion as to the operation of WA statutes was such a threat (See Plaintiffs 2/24/11 Exhibits 1-4), only then did I understand that the federal definition of those terms was so expansive. In respect for this court I am not objecting to its ruling. An "arrest" under RCW 9A.16.020 upon probable cause "is not unlawful" under WA state law, but any mention of such is a "threat to kidnap and injure" or "true threat" under federal law; I understand and I apologize for my ignorance of the law, both to Joan McBride and to the plaintiff.

I was warned on April 1, 2011 , at my proffer interview, that if I contradicted what I told the prosecution at any time in the future that it would constitute an act of perjury, so I cannot make any statement to the contrary in what the court reads here. This brings me to the first draft of an agreement from the prosecution (June 17, 2011) in which Vince Lombardi proposes I commit perjury to the court by stating that my intent was for my email to be interpreted to be a "true threat," a term which had not yet been used in my case. The context of and the terms used in the first agreement allege that I was going to "cause" an arrest of Joan McBride and that the people with whom I was "wol:king" intended to harm her.

The agreement also calls for restitution for substantial disruption of governmental function when, in fact, I was told by others who may have ultimately conducted the subject arrests that those to be arrested would be arrested at home so as to totally avoid such disruption. The agreement also appears to argue that multiple threats occurred when, in fact, the only conduct to which any communication alluded was a warning about a pending RCW 9A.16.020 "arrest," by others, which "is not unlawful" except for under federal law where all references to such an arrest is a "true threat" or "unlawful violence," if the court stands by its Feb. 24, 2011 ruling about gov't exhibits each constituting such a "true threat." Can my warning to McBride that others would behave as the law permits rightfully be the cause of governmental disruption? Of not, why restitution?

**Ex.2 pg.15:**

In the subject first plea agreement there are calls for me to lie to the court outright with the intended result being my loss of more time than would otherwise be imposed at sentencing. This follows instructions I received at the earliest stages of my case to never mention the conduct of the purported victim or of Kirkland police because it would only cause the court to rail at me, to inflict the most severe and painful punishments it could get away with. I was told that Jenny Durkan would only accept complete confession, no matter how false, as my offer to plead, that she had a political statement to make at my expense due to the assault on Mrs. Gifford (Congress) in Arizona in late 2010. While my intent was solely that of sharing my tale and evidence of Kirkland's misconduct with a citizen's review panel for their opinion, and to give

Joan McBride a chance to argue and to prove otherwise prior to any further lawful act or filing BY OTHERS, J. Durkan and V. Lombardi will seek to convince this court that "true threat" in the plea agreement means "unlawful violence," which it does not.

To have to live a lie by refraining from incriminating Joan McBride simply because she's a public servant and because she and J. Durkan are close friends is what the court has already witnessed in me. The plea agreement is the fruits of threats to supersede the indictment with perhaps fifteen false charges where bona fide 18 USC 4 criminal complaints of others which I prepared and filed with Congress more than five years ago (which report perceived crimes by IRS agents) will be called "fraudulent tax documents" to the grand jury, causing charges under 26 USC 7206(2) and thus criminalizing complaints against IRS employees for violations of 26 USC 7214 and other criminal statutes under 18 USC.

## Ex.2 pg.17:

FACTS RELATIVE TO PLEA AGREEMENT:

The indictment in this case (#2:11-cr-00057-RSM, U.S. Dist. Court W.D. Wash. at Seattle) accuses me of "threaten[ing] to 'arrest' J.M. in her home," while the plea agreement accuses me of "threaten[ing] to cause others to enter J.M.'s home to 'arrest' her by law[.]" How can I set about 'causing others' to act in such a way? *I was just going to share evidence and testimony with others to see if they concur with my opinion that felony violations of WA state law had occurred*.

I had been told by another group that if the first group concurred they'd act to arrest the offenders pursuant to RCW 9A.16.020(2). My involvement was to be limited to sharing evidence, testimony, and information, and if others agreed that McBride and O. Rey are felons they would likely arrest her and Rey, the offenders, which I understand to be free speech for my part, even if the results would be "unlawful violence," which was never going to be the case.

> "Putting [certain individuals] in harm's way by singling them out for the attentions of violent but unrelated third parties is [conduct] protected by the First Amendment." Planned Parenthood 290 F.3d at 1063." (See *Sheehan v. Gregoire*, 272 F.Supp.2d 1135, 1149-50 (U.S. Dist. Court W.D. Wash. at Seattle)).

The difference between the indictment and the plea agreement reflects in very broad terms the testimony I gave at my April 1, 2011 proffer interview at 700 Stewart Street, Seattle, WA at which I answered questions asked by eight public servants for four hours with no invocation of 5th Arndt. privilege whatsoever. In attendance was an FBI Agent, a U.S. Marshall, two IRS Special Agents, U.S. Dept. of Homeland Security Agent John Dean, and Ass't. U.S. Attorneys Robert Westinghouse, Jill Otake, and Vince T. Lombardi. I was told at that interview that any contradiction to what I stated there which I might utter in the future would be perjury; this is precisely what I stated on April 1, 2011.

Plea agreement at pg.4, ln.27:

"9. The parties agree on the following facts . Defendant admits he is guilty of the charged offense.

a. Defendant DAVID RUSSELL MYRLAND admits that on or about August 30, 2610, he sent an email to "J.M.," the Mayor of the City of Kirkland, Washington, containing a threat to kidnap and injure J.M. Specifically, Defendant admits that he threatened to cause others to enter J.M.'s home to "arrest" her by law for offenses Defendant felt had been committed against him by police officers working for the City of Kirkland. Defendant further admits that he advised J.M. not to resist, as the people he was working with would be heavily armed and authorized to use force by law.

b. Defendant admits that said email was sent using Microsoft Corporation's Hotmail service, and that the email was routed through a server in San Antonio, Texas.

**Ex.2** pg.18:

c. Defendant further admits that he intended the email to be interpreted as a true threat by the recipient, J.M.

d. Defendant further admits that he had participated in conversations and meetings with other individuals about carrying out said threat; and that the threat, and similar threats were repeated in subsequent written and oral communications with individuals at the City of Kirkland."

When viewed in light of the factual depiction I truthfully stated at the April 1, 2011 proffer interview, the language of the plea agreement translates to:

The term "by law" means as provided by RCW 9A.16.020 as it relates to the citizen's arrest of any known felon.

The term "arrest" means as provided by RCW 9A. l 6.020 as it relates to the citizen's arrest of any known felon without any intended harm or injury to any person, and the taking of the person of any such felon only to authorities competent to receive them into custody as provided "by law."

The term "threat," "true threat," or "threat to kidnap and injure" means any reference made by me or by anyone else to RCW 9 A.16.020 in any opinion about WA state law, any correspondence from me or from other individuals, email, concurring opinions about WA state law from other individuals, conversation, or other conveyance with or to the City of Kirkland. Washington state statutes are a "true threat." In pretrial detention hearings this court ruled all of these to be such threats. (See Plaintiffs exhibits 1-4, Feb. 24, 2011 ). I intended my email to indicate that others (Group #2) would likely exercise rights secured to them by RCW 9A.16.020(2) if! my evidence against McBride first convinced others (Group #1) that her conduct against me was felonious. The lawful exercise of these statutory rights are the "true threat" of which the DOJ speaks in theplea agreement. This is what I stated on April 1, 2011 at my proffer interview.

The term "police officers working for the City of Kirkland" includes elected officials in Kirkland.

The term "threatened to cause others" means that I was going to share evidence and testimony which I felt proved Joan McBride guilty of felony violations of WA state and federal laws with one group of unrelated adults of which I have met only one and, if they concurred with me, a different group of unrelated adults of which I have met only one, the latter being a group of concerned parents who viewed McBride's conduct as a threat to their families who assured me that they'd likely perform the RCW 9A.16.020(2) citizen's arrest of Joan McBride in her home to avoid obstruction of City of Kirkland governmental matters and operation.

The term "guilty of the charged offense" means I admit that I conveyed via email a reference to RCW 9A.16.020 to Joan McBride promising to share information about her with unrelated third parties, promising her the opportunity to appear and defend against my accusations, and promising to share the opinion of said third parties with other unrelated third parties who assured me that they would likely and safely exercise RCW 9A.16.020(2) rights of citizen's arrest of the

**Ex.2 pg.19:**

person of known felons whose conduct imperiled the well being of their families strictly within the confines of the law or "by law."

By merely informing McBride that I would share information concerning felonious conduct on her part with individuals I hoped would concur, and that on their own others would, without my instruction, control, discretion or retainer, likely act pursuant to RCW 9A.16.020. I am guilty of "threatening to kidnap and injure" her.

*If I had not so informed McBride, would my act of sharing information with others as described be an offense under any federal or state criminal statute? If so, how exactly am I to know this in advance of informing McBride of these truths? Is telling the truth in the manner I had planned, or the manner in which I shared it with McBride, a crime?* Can an "offer" under RCW 9A.16.020(2) be a federal offense without violating 28 USC 1738 which requires that state enactments be paid their full faith and credit? *Am I to know that what WA state law permits others to do is a kidnapping and injury or "unlawful violence" on their part or on my part, and that my informing McBride of the likelihood of such occurring at the hands of others is such a "threat" on my own part to do so?*

This is the nature or fabric of the mission of the court under the plea agreement the Dept. of justice has entered into with me, by its own terms. McBride was to be "arrested" - "by law" - by others acting on their own and utterly without me having done more than to share information about the conduct of McBride and others. Is my conduct a threat of "unlawful violence" when my communication predicted a mere and uneventful citizen's arrest of McBride's person "by law" at the hands of unrelated third parties who had probable cause and reasonable suspicion that McBride is a felon?

A statute like [sec.] 879, "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. U.S.*, 394 US 705, 707 (1969).

Although the State cannot criminalize constitutionally protected speech, the First Amendment does not immunize "true threats." *Id.* at 708 . The court held in *Virginia v. Black,* 538 US 343 (2003), that under the First Amendment the State can punish

threatening expression, but only if the "speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id. at 359." (See *U.S. v. Bagdasarian*, #09-50529 (CA9 July 19, 2011))."

**Ex.2 pg.20:**

"I planned and 'threatened' to speak to other people about the conduct of Joan McBride; and only when the court's Feb. 24, 2011 definition of "true threat" is accepted am I guilty as I have pled. If my speech regarding the truth about McBride causes others to act under RCW 9A.16.020 but independently from me to arrest her "by law," and if I warn or inform her of this likelihood, then I' have threatened to kidnap and injure her as charged. If my warning to McBride that I would share the truth about her with others, and my warning to her that a citizen's arrest of her person by others not under my control or instruction would result from my having done so, if an RCW 9A.16.020(2) citizen's arrest by others acting independently from me is "unlawful violence" on my part, and if these facts constitute a "true threat."

IN SUM: "I think you've committed at least one felony, and group #2, to which I have no relation, will arrest you "by law" as provided by RCW 9A.16.020 if group # 1 agrees with me when I tell them what I know. I intend this message to be interpreted as a threat to share information and to reference to WA state law which is a "true threat." "

Is this (a lawful citizen's arrest to be performed by unrelated third parties) the "unlawful violence" prohibited by 18 USC 875(c)? I would never have dreamed that federal law prohibits me from warning a felon who was in possession of property stolen from me (including a car) that they face a citizen's arrest BY OTHERS when the WA legislature has already so warned them, or that federal law prohibits the verbal spreading of the truth about anything.

The language of the plea agreement is proposed by the DOJ which seeks this conviction, and it proposes that these acts on my part constitute a "threat to kidnap and injure" Joan McBride, yet my intent was always to merely convey to Joan McBride the truth about others over which I've never enjoyed any dominion, discretion, or control of any nature, and who would act as provided "by law," just as my email to her stated. *I'm guilty as pled in the agreement, because I told McBride that I would speak to others using the truth to give them reasonable suspicion of felonious conduct on her part, and for telling her that her "lawful arrest" would likely occur as a result, and because I intended it as a reference to RCW 9A.16.020 and as a threat to spread the truth, and as nothing more*.

A "true threat" is any reference to RCW 9A.16.020 or a promise to spread the truth, I sent my email which contains 'Such a "true threat," I take full responsibility for my having referenced WA state law and for promising to spread the truth, and I am very sorry for any perception on the part of McBride or others that my reference to WA state law or the truth threatened their personal safety. *I DID NOT admit or plead that I intended my communication to be interpreted or understood as a threat to inflict harm, injury, or kidnapping, or that I would commit any act of unlawful violence, for to now claim that would be perjury according to Ass't. U.S. Attorney, Robert Westinghouse's instructions at my April 1, 2011 proffer interview, because to so plead*

*would contradict my testimony given there and then. To cause others to make an uneventful citizen's arrest as permitted by law by telling them the truth about Joan McBride, and communicating my intent to do so to her, is my crime.*"

Ex.2 pg.25:

MEMORANDUM; Citizen's arrest:

The presentencing report says that those receiving word that they face citizen's arrest were scared due merely to being arrested, while they do not dispute allegations that they've committed many felonies under WA state and federal law. The common law right of citizen's arrest is codified, in Washington state, at RCW 9A.16.020(2) which reads as follows:

RCW 9A.16.020 use of force - When lawful.- The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:

(1) Whenever necessarily used by a public officer[.]

(2) whenever necessarily used by a person arresting one who has committed a felony and delivering him or her to a public officer competent to receive him or her into custody.

(3) whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary.

RCW 9A.16.020(1) is the source of law enforcement's authority to use force. (See *Brooks v. City of Seattle*, 599 F.3d 1018 (CA9 2009); U.S. Dist. Court at Seattle, see *Wakagira v. Seattle*, #08-1108-JLR on 8/3/09; *Martinez v. U.S.*, #08-265-JLR on 8/3/09; *John v. Berry*, 469 F.Supp. 922 (2006); U.S. Dist. Court at Spokane, see *Logan v. Weatherly*, #CV-04-214-FVS on 616106; Logan v. City of Pullman Police Dept., #CV-04-214-FVS on 6/13/06).

The right of citizen's arrest is recognized by Washington state courts as a legitimate, proper, and lawful method of protecting one's self and one's property from injury and offense.

"The rule seems to be similar when an arrest is a so-called citizens arrest, made by one not a law enforcement officer; i-.e., it requires reasonable and probable cause to believe the arrested party guilty of a felony before the arrest will support a search and seizure of evidence of a crime. Information, .belief, or-.suspicion as to commission of a felony, as jurisdiction for arrest by a private person without a warrant; 133 A.LR. 608 (1941)." (See *State v. Jack*, 63 Wn.2d 632, 388 P.2d 566 (1964). See also *State v. Darst*, 65 Wn.2d 808, 811-12, 399 P.2d 618 (1965); *State v. Williams*, 27 Wn.App. 848, 621P.2d176 (1980); *State v. Harp*, 13 Wn.App. 239, 534 P.2d 842 (1975); *State v. Clarke*, 61 Wn.2d 138, 377 P.2d 449 (1962)).

"It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, any

breach of the peace of the United States." (See *Foss v. U.S.*, 266 F. 881 (1920), citing *In re Quarels and Butler*, 158 US 532, 15 S.Ct. 959, 39 L.Ed. 1080).

**Ex.2** pg.26:

  "This [NY state sec. 183] in effect is declaratory of the common law, which concededly permits a peace officer or a private individual to arrest without a warrant where a felony has in fact been committed by the person arrested and the person making the arrest had probable cause for so believing. See *Carroll v. U.S.*, 267 US 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; *Brady v. U.S.*, 300 F. 540 (CA6 1924); Bishop, New Crim. Proc. (2d ed.) at sec. 181." (See *U.S. v. Gowen*, 40 F.2d 593 (CA2 1930)).

  The right of citizen's arrest extends to felony violations of federal laws, and is governed by state law. (See *Brady v. U.S.*, 300 F. 540 (CA6 1924); *U.S. v. Coplon*, 185 F.2d 629 (CA2 1950); *Richardson v. U.S.*, 217 F.2d 696 (CA8 1954); *Ward v. U.S.*, 316 F.2d 113 (CA9 1963); *Elkanich v. U.S.*, 327 F.2d 417 (CA9 1964); *U.S. v. Swarovski*, 557 F.2d 40 {CA2 1977}; *Dorsey v. U.S.*, 174 F.2d 899 (CA5 1949)). Conspiracy against constitutional rights is a federal felony. (See 18 USC 241).

  In *Jack v. Rhay* (1966), the Ninth Circuit court says, "Under all of the facts it is established to my satisfaction that the arrest was lawful and the search was incident to it. This made the evidence admissible. Reasonable cause to believe that a felony has been committed and the arrested person committed it are sufficient to legalize the arrest even if made by private citizens. See *Fernandez v. Klinger*, 346 F.2d 210, 211 -12 (CA9 1965); *Elkanich v. U.S.*, 327 F.2d 417 (CA9 1964), Cert. den. 377 US 917, 84 S.Ct. 1182, 12 L.Ed.2d 186; *Ward v. US*, 316F.2d113 (CA9 1963), Cert. den. 375 US 862, 84 S.Ct. 132, 11 L.Ed.2d 89; *Richardson v. U.S.*, 217 F.2d 696 (CA8 1964); U.S. v. Coplon, 185 F.2d 629, 634, 28 A.L.R.2d 1041 (CA2 1950), Cert. den. 342 :US 920, 72 S.Ct. 362, 96 L.Ed. 688; *Dorsey v. U.S.*, 174 F.2d 899, 901 (CA5 1949), Cert. den. 388 US 950, 70 S.Ct. 479, 94 L.Ed. 586, and 340 US 878, 71 S.Ct. 116, 95 L.Ed. 639; *State v. McClung*, 66 Wash.Dec. 639, 644, 66 Wash.2d·654, 404 P.2d 460 (1965))." (See *Jack v. Rhay*, 366 F.2d 191 (CA9 1966), decided upon facts set forth in the opinion in *Washington State v. Jack*, 63 Wn.2d 632, 388 P.2d 566 (1964), supra).

  This annotation from the Ninth Circuit (above) displays its acknowledgement of arrests performed by private citizens as lawful acts, and it draws upon several circuits' decisions with which the Supreme Court has 'concurred to make its point which, in a plain sense, tells us that such arrests are neither "injuries" or "kidnapping," a fortiori, the law plainly permits such arrests.(See also *U.S. v. Fullbright*, 105 F.3d 443 (CA9 1995) in MT; *Mills v. Hill*, 330 F.Appx. 135 (CA9 2009) in OR; *U.S. v. Grigg*, 498 F.3d 1070 (CA9 2007) in OR; *Tekle v. U.S.*, 457 F.3d 1088 (CA9 2005) in GA; *Hroscikiski v. City of Glendale*, 146 F.Appx. 94 (CA9 2005) in CA; *Rhomberg v. Wilson*, 108 F.3d 339 (CA9 1996) in CA; Collins v. Womancare, 878 F.2d 1145 (CA9 1989). See also unpublished opinions: *Corrigan v. Jaeger*, 43 F.Appx. 69 (CA9 2002) in NV; *Hopkins v. Bonvicino*, 573 F.3d 752 (CA9 2002) in CA; *Oltarzewski v. Martinez*, 50 F.3d 17 (CA9 1995) in AZ; *Sasso v. Wong*, #93-15055 (CA9 1994) in CA).

  "There being no special federal statute on the subject, the arrest in Florida [or any state] for a federal offense is governed by Florida [or any state] law; *United States v. DiRe*, 332 US 581, 68 S.Ct. 222, 92 L.Ed. 210. The Florida [or another state's law]

law is the common law, as modified by statute . .. The common law authorizes a private person also to arrest for a felony committed in his presence; or if a felony has been committed, and he has probable cause to believe and does

**Ex.2 pg.27:**

believe the person arrested to be guilty. He can justify his not getting a warrant, though he had the opportunity, by proving. the arrested person was actually guilty. 4 Am.Jur., Arrest, 35, 36, 37; C.J.S., Arrest sec. 8. See also *U.S. v. Gowen*, 40 F.2d 593 (CA2), and *Brady v. U.S.*, 300 F. 540, 541 (CA6)." (See Dorsey v. U.S., 174 F.2d 899 (CA5 1949), supra. See also *U.S . v. Fullbright*, 105 F.3d 443 (CA9 1995); *Mills v. Hill*, 330 F.Appx. 135 (CA9 2009); *Hopkins v. Bonvicino*, 573 F.3d 752 (CA9 2008); U.S . v. Grigg, 498 F.3d 1070 (CA9 2007); *Tekle v. U.S.*, 457 F.3d 1988 (CA9 2005); *Hroscikoski v. City of Glendale*, 146 F.Appx. 94 (CA9 2005)).

Every reference to an arrest under RCW 9A.16.020 refers to a plainly lawful act when reasonable suspicion or probable cause exists to believe a person has committed a felony. The United States asserts that any such arrest is a violation of 18 USC 875( c). In this there lies no "true threat," no injury, and no kidnapping, nor any offer to so act; just protected speech. A fortiori, there is, in this, no violation of 18 USC 875(c) (no threat of "unlawful violence" or "true threat," see *U.S. v. Bagdasarian*, #09-50529 (CA9 July 19, 2011) at [1], citing *Virginia v. Black*, 538 us 343, 359 (2003)).

"Defendant asserts the broad right to outlaw any speech - whether it be anti-Semitic, anti-choice, radical religious, or critical of police - so long as a jury of one's peers concludes that the speaker subjectively intends to intimidate others with that speech. This brash stance strikes at the core of the First Amendment and does not comport with constitutional requirements. "Putting [certain individuals] in harm's way by singling them out for the attentions of violent but unrelated third parties is [conduct] protected by the First Amendment." Planned Parenthood, 290 F.3d at 1063. Moreover, once the government places personal identifying information in the public domain, reliance must rest on the judgment of those who decide what to publish or broadcast. *The Florida Star*, 491 US at 538 (citations omitted)." (See *Sheehan v. Gregoire*, 272 F.Supp.2d 1135, 1149-50 (U.S. Dist. Court, Western WA at Seattle, WA)).

While WA state statute (RCW 9A.16.020) is clear, that any person with a reasonable suspicion that a felony has been committed may use, offer to use, or attempt to use force to arrest the person suspected of such conduct, as a private citizen, and while this constitutes a mere reflection of the same right at common law, the United States is actively (in 2011) pursuing criminal charges (18 USC 875(c), see #2:11-cr-00057-RSM, U.S. Dist Court, W.D. Wash.) to accomplish the abolishment of this right of citizen's arrest by calling it "kidnapping and injury," which is patently impermissible. (See *Murdock v. Pennsylvania*, 319 US 105, 87 LEd. 1292, 63 S.Ct. 870 (1943); *Grosjean v. American Press Co.*, 297 US 233, 80 L.Ed. 660, 56 S.Ct. 444 (1936); *Watchtower Bible v. Village of Stratton*, 536 US 150 (2002) citing *Murdock* and *Grosjean* (invalidating misdemeanor ordinance of Stratton requiring permit and notification to Mayor prior to door-to-door canvassing as a violation of First Amendment)).

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." (See *Bordenkircher v. Hayes*, 434 US 357, 363 (1978); *U.S. v. Goodwin*, 457 US 368, 372 (1982)). Every citizen has the right to be informed "as to what the state commands of forbids." (See *Lanzetta v. New Jersey*, 306 US 451 (1939). See also *Chambers v. NASCO, Inc.*, 501 US 32 (1991); *Hynes v. Mayor of Oradell*, 425 US 610, 620 (1976); *Smith v. Goguen*, 415 US 566, 574 (1974); *Bouie v. Columbia*, 378 US 347, 350-51, 352

**Ex.2 pg. 28:**

(1964), citing *U.S. v. Harris*, 347 US 612, 617 (1954); *Connally v. General Const. Co.*, 269 US 385, 391 (1926); *U.S. v. Cardiff*, 344 US 174, 176 (1952)).

""An offense created [by an unconstitutional law] is not a crime." *Ex parte Seibold*, 100 US 371 (1880). A conviction under [such a law] is not merely erroneous, but is Illegal and void, and cannot be a legal cause of imprisonment. *Id.*, at 376-77. If a law is invalid as applied to the criminal defendant's conduct, the defendant is entitled to go free ... [A] court has no "prudential" license to decline to consider whether the statute under which the defendant has been charged lacks constitutional application to [his] conduct. .. In short, a law "beyond the power of Congress," for any reason, is no law at all." (See *Bond v. U.S.*, S.Ct. slip op. of June 16, 2011, J. Ginsburg concurring op.).

While I ultimately intended to merely share information, testimony and evidence of crime, the authorities cited herein leave no room for speculation as to the legality of making, or offering or attempting to make, the citizen's arrest of any felon in Washington state.

IN SUM: The statutory language of RCW 9A.16.020(2) does not provide an exemption for public servants or anyone else who may be guilty of any federal or state felony violation.

Whenever a person possesses reasonable suspicion and probable cause to believe a felony has been or is being committed, he and those who seek to aid him are fully within their rights to use all necessary force to conduct the citizen's arrest of that felon's person, to hold them, or to take custody of them and to deliver them to the authorities competent to receive them into custody. I never intended to violate any WA state or federal law."

**\*End excerpts of acceptance of responsibility letter.**

Plaintiff has at all times acquiesced to this interpretation of the subject contract (plea agreement), has never taken exception to this description of the offending conduct, and has acted in acceptance of Defendant's glossary of terms relating to the contract. At no time has the Plaintiff or the Court suggested, or even mentioned, the threatened conduct (sharing the public record) on the Defendant's part as a true threat, but rather has only alluded to the possible RCW 9A.16.020(2) arrest of a felon by others as unlawful violence.

Under Defendant's supplemental and timely description of the terms of the subject contract, Plaintiff has subjected him to incarceration, denial of personal privacy on countless occasions, confinement in close proximity with hundreds of mentally retarded inmates, loss of good time and halfway house privileges as punishment for a dry bladder, and to countless other indignations in the course of punishment for his having threatened to share the public record with others who have rights under common law and under RCW 9A.16.020. This is proof of the meeting of the minds of the parties to the subject contract.

While the offending conduct must constitute "unlawful violence," the record remains barren of a cite to any statute, state or federal, that prohibits as an act of violence Defendant's sharing of the public record with others, for any purpose. The subject contract fails to support Defendant's sentence, his conviction, or the punishment which he has endured.

These authorities and this evidence supports Defendant's contentions and challenges made in his motion to vacate, and are hereby incorporated by this reference.

Respectfully submitted:

_Gregory Mitchell_
Gregory Mitchell

_Dec. 15, 2014_
Date

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /